M. VAUGHN, Trustee, *v.* HENRY GROTENKEMPER and others.

'October Term, 1875.

MORTGAGE TO SECURE ACCEPTANCES WITHIN A GIVEN PERIOD WILL COVER RENEWALS BEYOND THAT PERIOD. — A mortgage recited that the mortgagees had agreed, for the accommodation of the mortgageors, to accept a certain draft, "and any renewal or renewals of the same, if necessary;" and that the mortgagees had also agreed to accept, for the like accommodation of the mortgageors, any other drafts drawn by said firm on them, to a given amount, either as renewals or originals, "within a period of one year from the date hereof;" and that the conveyance was intended to secure and indemnify the mortgagees upon any acceptances, renewals or originals, made for the mortgageors "as aforesaid." *Held*, that the mortgage covered all liabilities by acceptances within the year prescribed, although renewed afterwards.

*E. H. East*, for complainant.
*D. F. Wilkin*, for defendants.

THE CHANCELLOR : — On May 22, 1869, J. F. O'Shaughnessey conveyed to H. Grotenkemper & Co. certain lots of land in and near Nashville, in mortgage, to secure the mortgagees from liability on acceptances then agreed to be made by them of drafts drawn by and for the accommodation of the firm of J. F. O'Shaughnessey & Co., as in the mortgage mentioned. Upon bill filed in this court, on January 25, 1873, for the foreclosure of this mortgage, a decree was rendered in favor of Grotenkemper & Co. against O'Shaughnessey & Co. for the liabilities incurred under these acceptances, and the lots were ordered to be sold in satisfaction thereof.

On October 27, 1870, J. F. O'Shaughnessey and Michael J. O'Shaughnessey, the persons comprising the firm of J. F. O'Shaughnessey & Co., joined in a deed conveying the same lots mentioned in the previous deed, with other realty, to complainant, M. Vaughn as trustee for creditors other than Grotenkemper & Co. And on August 8, 1873, this

bill was filed to enjoin the sale under the decree of fore-closure of the Grotenkemper mortgage, upon the ground that the liabilities incurred · by the acceptances mentioned therein had been paid.   The evidence, however, leaves no room for doubt that the· original acceptances of Groten-kemper & Co., admitted to be secured by the mortgage, were renewed from time to time. as the drafts fell due, each prior draft being paid by the proceeds of the succeeding draft discounted in bank, until Grotenkemper & Co. finally paid them.   The debt upon which the decree of foreclosure was rendered commenced with the original acceptances pro-vided for in the mortgage, and was in all respects fair and just.   But the complainant, Vaughn, makes the point that the mortgage to the Grotenkempers, on its face, is limited to acceptances, whether original or in renewal, within twelve months after the date of the mortgage ; that all the accept-ances within that period were paid by the proceeds of re-newed acceptances after the expiration of the twelve months, and the mortgage was thereby extinguished in favor of the subsequent trust.

The facts, distinctly deposed ·to both by Henry Groten-kemper and J. F. O'Shaughnessey, are that Grotenkemper & Co. agreed to accept the drafts of O' Shaughnessey & Co. to the extent of $5,000, for the accommodation of the drawers, on the faith of the mortgage ; that drafts to this amount were accepted within the next sixty days after the mortgage was executed, and discounted at Nashville, O'Shaughnessey & Co. receiving the proceeds ; that these drafts were renewed on short date from time to time, the renewal drafts being accepted by Grotenkemper & Co., and discounted at Nashville, the proceeds being received by O'Shaughnessey & Co., and sent, in the form of exchange, to Grotenkemper, to meet or take up the former drafts. The last renewed drafts were drawn and accepted after the expiration of twelve months from the date of the mortgage, and Grotenkemper & Co. were not out, in the way of money,

until they paid the last acceptances. These facts raise squarely the question whether the mortgage does, by its terms, extend to these acceptances and the money thus paid.

The language of the mortgage, upon which the question between the parties arises, is as follows: "But this conveyance is made for the following purposes, and none other, that is to say: J. F. O'Shaughnessey & Co. have this day drawn a draft upon H. Grotenkemper & Co. for the sum of $2,000, payable to themselves at sixty days, and addressed to said H. Grotenkemper & Co., which said draft the said Grotenkemper & Co. have agreed to accept, and also to accept any renewal or renewals of the same, if necessary; and they have further agreed to accept, for the accommodation of said firm of J. F. O'Shaughnessey & Co., in the progress of their business, any other drafts drawn by said firm upon them to the amount of five thousand dollars, or to any amount under said sum, that may be drawn by them now or hereafter, either as renewals or originals, within a period of one year from the date hereof, and this conveyance is intended to secure and indemnify said H. Grotenkemper & Co. upon any acceptances (renewals or originals) made for said firm of J. F. O'Shaughnessey & Co. as aforesaid. Now, if said firm of J. F. O'Shaughnessey & Co. shall meet said acceptances as the same become due, according to their tenor and effect, and indemnify said Grotenkemper & Co. against loss by reason thereof, then this conveyance to be null and void; otherwise, to remain in full force and effect."

The first observation which occurs upon reading this instrument is, that the plain and obvious intent of the parties was to secure Grotenkemper & Co. against loss by reason of the liability incurred by their acceptances of the drafts to be drawn for the accommodation of O'Shaughnessey & Co. It was not the debt created by the eventual payment of the money on either the original or renewed drafts, but the liability created by the acceptances. They

were to be indemnified against loss by reason thereof. The second observation is, that both parties contemplated a renewal of the acceptances, the security to continue for the renewals as for the originals. It is clear, too, that any limitation of the renewals would be for the protection of the Grotenkempers. The O'Shaugnesseys would have no interest to limit the period within which renewals should be made, because they could close the transactions at any moment by paying the drafts. The instrument, moreover, carries on its face an express stipulation that the security, or mortgage, should continue as before, notwithstanding any renewals which might be made, — thus meeting the requirement of our Supreme Court as to the continuance of the security notwithstanding the change in form of the evidence of debt. *Cleveland* v. *Martin*, 2 Head, 132. Nothing but the plainest expression to the contrary, or some positive rule of technical law, can induce the court to disregard these obvious intentions. Looked at in a general way, the equity of Grotenkemper & Co. is prominent.

Let us see, now, if the letter of the bond correspond with its spirit. The first clause recites the drawing of the $2,000 draft, of even date with the mortgage, and that Grotenkemper & Co. agree to accept it, " and also to accept any renewal or renewals of the same, if necessary." There is no limitation of time as to the renewal of this first draft, and although the parol testimony leaves no doubt that this acceptance was to constitute a part of the $5,000 acceptances mentioned in the next clause, yet it is not so nominated in the bond. The instrument, as drafted, unquestionably provides for additional aceptances to the amount of $5,000. The language is : " And they (Grotenkemper & Co.) have further agreed to accept, for the accommodation of said firm of J. F. O'Shaughnessey & Co., in the progress of their business, any other drafts drawn by said firm upon them to the amount of $5,000, or to any amount under said sum, that may be drawn by them now or hereafter, either as

renewals or originals, within a period of one year from the date hereof." The wording is not very accurate, but it is plain enough. This clause contains, not the agreement of O'Shaughnessey & Co., but of Grotenkemper & Co. It is the latter firm which has "agreed to accept" to a definite sum, within a definite period. They bind themselves to accept to that amount, if called upon, and to continue to do so in renewal for that period. But there is nothing in it which prevents them, if they choose to do so, from continuing the renewals beyond that period. The obligation of the O'Shaughnesseys is in the next clause: "And this conveyance is intended to secure and indemnify H. Grotenkemper & Co. upon any acceptances (renewals or originals) made for said firm of J. F. O'Shaughnessey & Co. as aforesaid." The argument for the complainant rests on the last two words, "as aforesaid;" for, if they are omitted, the conveyance covers literally all acceptances, renewals or originals, no matter when made. The argument is that the acceptances "as aforesaid" mean acceptances made within the twelve months. But the limitation relates to Grotenkemper & Co.'s obligation, not to that of O'Shaughnessey & Co. The obligation of the latter is to indemnify the former "upon any acceptances, renewals or originals," without any limitation of time. And if we must stick to the letter, it should be the letter which secures indemnity against all "original acceptances," no matter how often renewed; for the original acceptances were all made within the twelve months, and the acceptors could not be indemnified against loss thereon, except by the drawers paying them out of their own means, not out of means raised upon the credit of Grotenkemper & Co. by the renewals.

I am clearly of opinion that Grotenkemper & Co. are entitled to the indemnity to the extent of their decree, interest, and costs, the complainant coming in for any surplus. The complainant must pay the costs of this case.